ATTORNEY FOR HON.
JEFFREY A. HARKIN

David W. Weigle
Hammond, Indiana

ATTORNEY FOR THE COMMISSION
ON JUDICIAL QUALIFICATIONS

Adrienne L. Meiring
Indianapolis, Indiana

# In the
# Indiana Supreme Court

**FILED**
Dec 20 2011, 1:27 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 45S00-1106-JD-390

IN THE MATTER OF THE HONORABLE
JEFFREY A. HARKIN, JUDGE
OF THE HAMMOND CITY COURT

## JUDICIAL DISCIPLINARY ACTION

**December 20, 2011**

**Per Curiam.**

This matter comes before the Court as a result of a judicial disciplinary action brought by the Indiana Commission on Judicial Qualifications ("Commission") against the Respondent, Jeffrey A. Harkin, Judge of the Hammond City Court. Article 7 Section 4 of the Indiana Constitution and Indiana Admission and Discipline Rule 25 give the Indiana Supreme Court original jurisdiction over this matter.

Subsequent to the Commission's filing of formal charges, the parties jointly tendered a "Statement of Circumstances and Conditional Agreement for Discipline," which the Court accepted by order on November 17, 2011. The parties have stipulated to the following facts.

**Unauthorized Traffic Infraction Deferral Program**

The jurisdiction of the Hammond City Court includes traffic infraction cases. From 2005 until March 8, 2011, traffic infraction litigants in the Hammond City Court who otherwise had good driving records were given the following options to resolve their cases: (a) enter into a deferral agreement with the prosecutor; (b) admit liability and pay the face value of the ticket; (c) attend the Hammond City Court Traffic School ("Traffic School"); or (d) contest the ticket and proceed to trial. Traffic infraction litigants in the Hammond City Court learned of their options from court staff who, prior to each court session, would screen the litigants for eligibility in the Traffic School program and/or the prosecutor's deferral agreement program and then inform eligible litigants of their options.

Participants in the prosecutorial deferral agreement program were statutorily required to enter into a written agreement with the prosecutor and pay various fees. *See* Indiana Code § 34-28-5-1(h) (West 2011). For moving-violation traffic infraction litigants, the total fee in 2010 for the prosecutor's deferral program was $191.50. The fee for attending the Traffic School, however, was considerably less – $75 from July 2005 through December 2009 and $100 thereafter – with the fee apportioned between the Northwest Indiana Traffic School (which administered the Traffic School) and the City of Hammond (for rental of meeting space). The Traffic School program was a court program – the Lake County Prosecutor's Office did not participate in the screening process, did not enter into written deferral agreements with litigants who chose Traffic School, and did not move for dismissal of the cases of litigants who attended Traffic School.[1]

Not surprisingly, most eligible traffic infraction litigants chose the less expensive Traffic School option. After selecting that option, court staff provided the litigant with an information sheet explaining when and where to attend Traffic School and the fee for the program. The sheet also explained that if the litigant successfully completed the Traffic School class, then no points would be assessed against the litigant's driver's license and the infraction case would be dismissed; however, if the litigant failed to attend the class, then the court would enter default judgment against the litigant on each count plus court costs, the Bureau of Motor Vehicles would

---

[1] The Traffic School was a lucrative program as well. In 2010 alone, it generated $320,000 in fees, $192,000 of which went to the City of Hammond.

2

be notified, and points would be assessed against the litigant's driving license. After litigants voiced their selection of the Traffic School option and received the Traffic School information sheet, court staff told the litigants they were free to leave. The litigants did not go before the judge nor enter into any written agreement with the prosecutor. Instead, court staff would stamp onto the chronological case summary, "Defendant appears and pleads guilty. Defendant sentenced to the Hammond City Court Traffic School. Case to be dismissed upon completion of Traffic School." Respondent was aware and approved of the information his staff conveyed and the procedures utilized concerning the Traffic School program.

From 2005 through March 8, 2011, Respondent dismissed the traffic infraction cases of all litigants who attended the Traffic School and paid the applicable fee, and entered default judgment, imposed fines and court costs, and ordered the suspension of driver's licenses of all litigants who selected Traffic School but failed to complete the class. He did so, however, without any legal authority to do so. Only the prosecuting attorney had authority to establish a deferral program for traffic infractions. *See* Ind. Code § 34-28-5-1(h). No statute, Supreme Court rule, or other legal precedent authorized Respondent either to establish a traffic infraction deferral program or to discharge traffic infraction cases without a specific request from the prosecuting attorney.

Beginning in 2006, and then again in 2007, 2008, and 2010, the State Board of Accounts ("SBOA") issued audit reports indicating that the resolution of traffic infraction cases through the Traffic School did not comply with Indiana Code section 34-28-5-5, which pertains to the payment and depositing of court costs. On at least one occasion, Respondent met with a SBOA representative to discuss the issue and express his disagreement with the SBOA's interpretation of Indiana Code section 34-28-5-5. He did not, however, seek a second opinion from the Indiana Judicial Center or any other judicial resource about whether the Traffic School program was, in fact, violating state law.

On July 26, 2010, Respondent met with executives from the Lake County Prosecutor's Office. During the meeting, the Lake County Chief Trial Deputy informed Respondent that the Traffic Court program did not comply with Indiana Code section 34-28-5-1(h) and was not otherwise authorized by law, and the other executives voiced their objections to Respondent's

3

continued use of the Traffic School program. Respondent, however, continued to offer the Traffic School program to eligible litigants for seven more months. He discontinued doing so only after the Commission's counsel, on March 8, 2011, informed him of the Commission's belief that Respondent was abusing his authority by diverting litigants' cases through a *de facto* deferral program that was not authorized by the county prosecutor.

The Respondent and the Commission agree that by referring traffic infraction litigants to the Traffic School and then dismissing their cases upon their completion of the program without any dismissal request from the prosecutor, Respondent abused his judicial authority, committed conduct prejudicial to the administration of justice, and violated the Code of Judicial Conduct's provisions that required him: to "comply with the law," Ind. Judicial Conduct Rule 1.1 (West 2011) (asterisk deleted); to "act at all times in a manner that promotes public confidence in the integrity, independence, and impartiality of the judiciary," Jud. Cond. R. 1.2 (asterisks deleted); to "uphold and apply the law," Jud. Cond. R. 2.2; and to "perform judicial and administrative duties competently," Jud. Cond. R. 2.5. The parties also agree, in mitigation of these violations, that the Hammond City Court had been referring litigants to Traffic School for decades, and previous judges of that court had not been notified of any concerns about the legality of the program from the Lake County Prosecutor's Office, the SBOA, or any other entity. Further, deputy prosecutors assigned to the Hammond City Court were aware of the court's Traffic School program and practice but did not voice any objections to it until the meeting on July 26, 2010. Finally, Respondent has taken measures to address some of the personal issues that may have accounted, in part, for his lack of thoroughness in investigating the concerns brought to his attention about the legality of his court's Traffic School program when they were raised with him.

## State v. Aubrey

On August 18, 2010, Matthew Aubrey was scheduled to appear before Respondent in case number 45H04-1006-IF-14765 for an alleged seatbelt violation. When Aubrey's case was called, the following exchange took place:

**Respondent:** Mr. Aubrey – Seatbelt violation. Admit or deny?

**Aubrey:** I deny. I have some paperwork though to back me up.

**Respondent:** Well . . . Let me ask you something. Was it under your arm?

**Aubrey:** Yes.

**Respondent:** Do you have a medical excuse for that from a medical doctor?

**Aubrey:** No.

**Respondent:** Then you have no paperwork to convince me of anything.

**Aubrey:** Well, under law that I was . . . uh

**Respondent:** Are you a lawyer?

**Aubrey:** No.

**Respondent:** Ok. Good. Don't hurt yourself.

**Aubrey:** It's just that under 9-19-10-2. Uhh . . . "Each occupant of a motor vehicle equipped with a safety belt shall have a seat belt properly fastened." It does not say what properly is. The same thing in the driver's manual – page 75. "Indiana law requires that a driver and all passengers to [*sic*] use seat belts at all times when the vehicle is in operation. Operators of busses [*sic*] are also required to use seat belts."

**Respondent:** Is this an accurate description of your vehicle? That it's an '05 vehicle?

**Aubrey:** Yes.

**Respondent:** Okay. I believe that the automotive industry, since well before 2005, has installed seat belts that include a shoulder harness.

**Aubrey:** Yes.

**Respondent:** There you go.

**Aubrey:** Well, how are you supposed to know if nobody's ever told you?

**Respondent:** I'll tell you what – let's have a trial on this, okay? Then it gets about 10 times as expensive. October 6.

**Aubrey:** Uh . . .

**Respondent:** Do you admit the seatbelt violation?

**Aubrey:** I do.

**Respondent:** Alright. $25. Step around and get a to-pay card.

The parties agree that Respondent's statements made during the hearing in 45H04-1006-IF-14765, as quoted above, violated the Code of Judicial Conduct's provisions that required him: to "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary," Jud. Cond. R. 1.2 (asterisks deleted); to "perform all duties of judicial office fairly and impartially," Jud. Cond. R. 2.2; to refrain from "act[ing] in a manner that coerces any party into settlement," Jud. Cond. R. 2.6(B); and to "be patient, dignified, and courteous to litigants," Jud. Cond. R. 2.8(B). *See also* In re Young, 943 N.E.2d 1276, 1279 (Ind. 2011) (imposing discipline where judge threatened to, and did, impose increased penalties for traffic infraction litigants who exercised their right to trial instead of pleading guilty, so as to penalize them for doing so and to discourage others from doing so).

### Sanction

The parties agree that the appropriate sanction for Respondent's misconduct is suspension without pay for sixty (60) days. The Court agrees with the parties that under the circumstances of this case, the disposition they propose is an appropriate result. As we stated recently in another matter, "A suspension from office without pay, regardless of duration, is not a minor sanction. Even more than a public reprimand, any such suspension is a significant blemish on a sitting judge's reputation." Matter of Hawkins, 902 N.E.2d 231, 246 (Ind. 2009).

Accordingly, Respondent, Jeffrey A. Harkin, Judge of Hammond City Court, is hereby suspended from office without pay for a period of sixty (60) days, commencing at 5:00 p.m. CST

on Tuesday, December 27, 2011. The suspension shall terminate and the judge shall automatically be reinstated to office at 5:00 p.m. CST on Saturday, February 25, 2012.

This discipline terminates the disciplinary proceedings relating to the circumstances giving rise to this cause. The costs of this proceeding, if any, are assessed against the Respondent.

SHEPARD, C.J., and DICKSON, J., SULLIVAN, J., RUCKER, J., and DAVID, J., concur.