RUCKER, J.,
concurring in part.
Three very experienced and highly-respected trial court judges serving as Masters in this case have recommended that the Respondent be removed from office. The majority has accepted the Masters’ recommendation and today orders Respondent’s immediate removal. For reasons the majority expresses I agree that Respondent should be removed from the bench. However, I disagree the removal should be ordered effective immediately.
Removal from office of an elected judge is a drastic measure and the most severe *631 sanction this Court can impose. With one exception, which I discuss in some detail below, absent agreement of the parties this Court has imposed such a sanction only twice in almost twenty years.[1] The common characteristic for this ultimate judicial sanction is conduct involving moral turpitude and willful misconduct in office.[2] See generally Matter of McClain, 662 N.E.2d 935 (Ind.1996) (harassing court employee and family by following her, placing anonymous phone calls, and sending her vulgar letters including one containing a used condom); Matter of Drury, 602 N.E.2d 1000 (Ind.1992) (soliciting loan from attorney and continuing to preside in his cases, soliciting loans from employees and family members which Respondent actively concealed, and attempting to retaliate against those who disclosed the loans totaling tens of thousands of dollars).
The forty-six counts of judicial misconduct alleged and proven by the Commission-all of which Respondent concedes she committed — essentially fall into two categories which can be characterized as: (1) mismanagement of judicial duties, and (2) unprofessional demeanor. Of the forty-six counts, the majority — thirty-two—fall in the former category and the remaining fourteen in the latter.[3] Our reported decisions for judicial misconduct involving unprofessional demeanor show that the sanction generally imposed is a period of suspension. See, e.g., Matter of Harkin, 958 N.E.2d 788, 792 (Ind.2011) (imposing sixty-day suspension for, among other things, making rude and improper statements to litigants); Matter of Young, 943 N.E.2d 1276, 1278, 1280 (Ind.2011) (imposing thirty-day suspension for, among other things, making improper statements to litigants and attorneys); Matter of Cox, 680 N.E.2d 528, 529, 531 (Ind.1997) (imposing thirty-day suspension for, among other things, advising a litigant that Respondent would apply a different sentencing guideline if the litigant were convicted after a jury trial than he would apply if litigant accepted a plea or a bench trial). In short, we have never removed a Judge from office for discourteous behavior.
On the other hand, “[o]ne of a judge’s most critical responsibilities is to oversee his or her court’s operation so all litigants are afforded their rights.” Matter of Hawkins, 902 N.E.2d 231, 246 (Ind.2009). In consequence this Court has removed from office a judge whose mismanagement of her judicial duties was so deficient that it demonstrated the judge was “either unable or unwilling to issue timely and docu *632 mented decisions in tbe cases assigned to her, causing real-life consequences for those whose matters are in her hands.” Matter of Kouros, 816 N.E.2d 21, 22 (Ind.2004). It is Kouros with its similarities to the facts before us that compels me to conclude Respondent in this case should not be immediately removed from office; but rather should be afforded the opportunity to demonstrate that she has the capacity to manage her court.
In a seventy-eight count complaint the Commission in Kouros alleged and proved Respondent violated the Code of Judicial Conduct. The Commission also alleged and proved Respondent engaged in willful misconduct in office. And although the Canon violations in that case are not precisely the same as those alleged here[4] the overwhelming majority, as here, involved Respondent’s mismanagement of her judicial duties.[5] But it is the events leading up to the filing of charges in Kouros that are relevant to the case before us. In general, for a period of nearly two years Respondent, with the oversight of this Court’s Division of State Court Administration, was given the opportunity to demonstrate she had the capacity to manage her court. Only after a period of reporting by Respondent and oversight by the Division did it become apparent that Respondent lacked such capacity.
In condensed form the salient facts in Kouros are these. Responding to .a directive from this Court, in February 2001 Respondent reported that she had taken action to address delayed rulings on cases that had occurred in her court so that “the backlog dilemma should not occur in the future.” Id. at 23. In January 2002 further inquiry was made concerning management of Respondent’s court. In October 2002 we directed the Division of State Court Administration to monitor Respondent’s case processing and report to the Court. Following a visit to Respondent’s court the Division observed over 200 files for cases in which hearings or trials had occurred but no corresponding orders or CCS entries had been made. Id. at 24. Thereafter in January 2003 we entered an order which established minimum standards and a schedule for Respondent to follow in managing files in her court. The order also directed Respondent to certify to this Court in a written report the specific actions she had taken to assure backlog problems were eliminated. Id. at 25. In March 2003 Respondent timely filed her report certifying that the standards set out in the Court’s order had been followed, would continue to be followed, and “every effort will be made to process cases in the manner outlined in this Court’s order.” Id. A month later the Division visited Respondent’s court again and found, contrary *633 to Respondent’s earlier certification, numerous case files checked out from the clerk’s office and several cases in which sentencing orders had not been timely issued. After receiving an explanation for these transgressions, in June 2003 this Court found that “Respondent had failed to perform her duties without good cause and that significant improvement in the administration of her court had not been sufficiently demonstrated.” Id. at 26. We therefore appointed a judge pro tempore to perform those duties “until Respondent’s term ended or until Respondent became able to perform those duties.” Id. We also left open the opportunity for Respondent to petition for reinstatement after ninety days.
In September 2003 Respondent filed such a petition declaring in part that during her suspension, she had conferred with fellow judges from around the State to learn more about operating a busy urban court, attended conferences on time and case management, and worked with the Division to learn how to manage her court. On December 12, 2003 the Court entered an order allowing Respondent to “resume her judicial duties based upon her conduct during the suspension and her assurances that she would manage her court effectively in the future.” Id. As it turns out by March 29, 2004 “Respondent’s office and bench were in a state of substantial disorder.” Id. at 27. Among other things in numerous cases files and sentencing orders had not been timely returned to the clerk’s office; there were signed orders dated weeks earlier with no file stamp; and orders dated weeks earlier with no signature. Id.
Despite persistent failure to perform her judicial duties over a substantial period of time, the Respondent in Kouros, with monitoring by the Division of State Court Administration, was given the opportunity to correct problems that ultimately led to the filing of disciplinary charges. The record here does not show any pre-filing intervention by the Division. And of course we are long past the point of charges being filed. But the question is whether the Respondent in this case has the capacity to (a) correct the systemic problems in her court that resulted in delayed rulings on several cases, see Counts 1 through 18 and 46 through 47, and (b) take necessary remedial measures to train and adequately supervise her court staff. See Counts 33 through 44.
In the papers submitted to us Respondent contends she indeed has taken specific steps to insure that delayed releases and untimely rulings will not happen again. And Respondent has outlined such steps with particularity. See Brown Affidavit at 4-5. The same is true with respect to the training and supervision of court staff. See id. But we need not be persuaded by Respondent’s self-report. Instead her asserted actions are easily verifiable and their results can be measured.
“The purpose of judicial discipline is not primarily to punish a judge, but rather to preserve the integrity of and public confidence in the judicial system.... ” Hawkins, 902 N.E.2d at 244. Those ends can be met in this case by imposing an immediate 60-day suspension without pay[6] followed by removal from office; but removal stayed to one year of supervised probation monitored by our Division of State Court Administration. During the probationary *634 period Respondent would carry the burden of demonstrating that she has the capacity to manage her court efficiently and effectively. A failure to do so would result in a probation violation and immediate removal from office.
This proposed sanction is both fair and equitable; would preserve the integrity of and public confidence in the judicial system; and is consistent with the treatment this Court afforded the Respondent in Kouros, a case that presented far more egregious facts than those that exist here.

.More recent removals from office were the result of agreements. See generally Matter of Moreland, 924 N.E.2d 107 (Ind.2010) (agreeing to permanent ban from judicial service): Matter of Chapala, 902 N.E.2d 218 (Ind.2009) (dismissing case as moot after respondent resigned from the bench and retired from the practice of law); Matter of Pfaff, 838 N.E.2d 1022 (Ind.2005) (agreeing to resign from the bench and a permanent ban from judicial office): Matter of Kern, 11A N.E.2d 878 (Ind.2002) (agreeing to resign from office with provision never to seek judicial office or serve in judicial capacity in Indiana); Matter of Edwards, 694 N.E.2d 701 (Ind.1998) (accepting resignation and ordering permanent bar from judicial office and disbarment from the practice of law).

. None of the charges in this case involve acts of moral depravity; and the Commission did not allege and the Masters did not find that Respondent engaged in "willful misconduct in office.” Admis. Disc. R. 2.5 III A(3).

. More specifically Counts 1 through 18 and 46 through 47 demonstrate delayed rulings on several cases; Counts 33 through 44 demonstrate a failure to train or adequately supervise court staff; and Counts 19 through 21, 23 through 32, and 45 demonstrate rude and discourteous behavior. See Findings of Fact, Conclusions of Law, and Recommended Sanction at 90-106.

. Specifically the Commission charged Respondent with violating the then-existing Canons 1, 2 and 3(B)(9) of the Code of Judicial Conduct. At the time, Canon 1 provided that a judge shall uphold the integrity of the judiciary, should participate in establishing and maintaining high standards of conduct and "shall personally observe those standards in order to preserve the integrity and independence of the judiciary.” Canon 2, which required a judge to avoid impropriety and the appearance of impropriety, provided in relevant part that a judge "shall respect and comply with the law[] and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary....” Canon 3(B)(9) provided that a judge "shall perform the duties of the judicial office diligently, including disposing of all judicial matters fairly, promptly, and efficiently.” Kouros, 816 N.E.2d at 28 (internal quotation marks omitted).

. For example Counts 1 through 35 involved the failure to issue sentencing orders promptly; Counts 37 through 49 involved delayed orders; and Counts 63 through 78 also involved the failure to issue sentencing orders promptly. Kouros, 816 N.E.2d at 28-29.

. "Any suspension with or without pay is a sanction that most judges would regard as substantial. And a suspension without pay for more than a few weeks in most cases will be tantamount to a forced resignation." Hawkins, 902 N.E.2d at 249 (Boehm, J., dissenting).